In the Matter of LOUIS WOLFISH, an Attorney, Respondent. SOLOMON A. KLEIN, Petitioner.

Second Department, November 25, 1969.

*Solomon A. Klein,* in person (*Joseph W. Ryan, Jr.,* of counsel), for petitioner.

*H. Elliott Wales* for respondent.

*Per Curiam.* The Justice of the Supreme Court to whom the issues herein were referred having submitted his report to this court wherein he found the charges as alleged, with certain exceptions as hereinafter indicated, to have been fully sustained by the evidence, the petitioner now moves to confirm the report.

This disciplinary proceeding was instituted against the respondent after hearings had been held by the Grievance Committee of the Rockland County Bar Association and a subsequent preliminary investigation into charges of professional misconduct had been conducted by the petitioner pursuant to a direction by this court. Extensive hearings were thereafter held before Mr. Justice GEORGE M. FANELLI on April 22, 23, 24, 28, 29, 30, May 1 and 5, 1969 and resulted in a typewritten transcript of 1,431 pages and the submission by Justice FANELLI of a most thorough 45-page report.

The charges against the respondent are set forth in 13 separate specifications of the petition. Briefly stated, the Justice found the respondent guilty of professional misconduct prejudicial to the administration of justice in that he had (1) attempted to unlawfully influence a police officer in connection with the performance of his duties, (2) willfully deceived a Justice of the Supreme Court in order to induce approval of proposed compromises of infants' personal injury claims and, in connection therewith, altered affidavits, (3) solicited negligence cases, (4) maliciously instituted malpractice actions against two separate physicians, and (5) wrongfully attempted to obtain a legal fee in excess of that awarded to him by the Workmen's Compensation Board.

The first three specifications (A, B and C) charge that the respondent unlawfully offered a bribe to a police officer with intent to influence him in the performance of his duties in connection with a criminal charge of leaving the scene of an accident that had been lodged against the respondent's client; that the respondent "counseled, advised and urged" the officer (1) to destroy and alter an official police accident report, (2) to fabricate a false report in place thereof, and (3) to withdraw or cause the dismissal of the criminal charge by making false representation of fact to the court; that he "advised and urged"

the officer to participate in an unlawful scheme to defraud an insurance company which had insured the respondent's client against personal injury and property damage claims, whereby the officer was to falsely claim that he had been inside the unoccupied police car which had been struck by the automobile driven by the respondent's client and to falsely claim that as a result thereof he had sustained serious personal injury; and that in connection with said scheme the respondent offered to represent the police officer as his attorney to prosecute the claim for personal injuries and advised that if the criminal charge lodged against his client were withdrawn or dismissed the respondent would obtain his client's co-operation in defrauding the insurance company.

The evidence offered in support of these three specifications, which were all found to be overwhelmingly sustained, consisted of the testimony of several police officers and a tape-recorded conversation had between the respondent and two police officers. In the said conversation, the respondent advised the officer referred to in these three specifications to go immediately to the emergency room at Ramapo General Hospital. When the officer stated there was nothing wrong with him and indicated that this would pose some difficulty in a physical examination, the respondent stated: '' I'll tell you what is wrong with you. * * * I would complain as follows: ringing sounds in your ears, spots in front of your eyes, dizzy, headaches — you banged your head on the wheel or the window — you don't remember, you're nauseous, you got pains in your neck, pains in your back, pains in your left elbow and your left knee. That's enough.'' The respondent then gave the officer the name and address of a local doctor whom he was to see the morning following his appearance at the hospital, stating: '' Just tell him that I told you to see him. And if you feel like spending some time in a hospital, he'll put you in.'' The respondent added: '' I'd go sick right now and shoot up to the Ramapo General Hospital emergency room. Give him all your symptoms, even though they don't buy that, as long as they make a record of all your symptoms.'' When the respondent ascertained from the officer that the officer had struck his finger with a hammer about three weeks prior to the conversation, the respondent stated: '' You show him that and you tell him that it's from this accident. You banged your finger on you don't know what — on the wheel. You were pushed against the wheel.'' Moreover, in informing the officer as to the potential monetary recovery, the respondent stated, '' The maximum you can get here is ten grand,'' and that it '' depends on how long you want to stay in the hospital.''

In fact, the respondent conceded the accuracy of the tape recording and the transcript thereof and, after being confronted therewith, admitted these three specifications, which he had previously denied in his answer to the petition. As stated in the report of Justice FANELLI, "Respondent has offered no mitigating factors to excuse his corrupt and nefarious scheme, which was not only reprehensible but which also showed a complete disrespect for the standards of professional ethics and his obligations as an attorney."

Three additional specifications (D, E and F) charge that, in connection with the approval of infants' compromise settlements, the respondent (1) "knowingly deceived and induced" a Justice of the Supreme Court to approve the settlement of infants' personal injury claims by preparing, causing to be executed, and submitting false affidavits which misrepresented or suppressed the terms of the offers of settlement, the names of the treating physicians, and the medical expenses incurred; and (2) altered affidavits that had been filed in the office of the Clerk of the Supreme Court, County of Rockland, after an order based on said affidavits had been signed by a Justice of the Supreme Court.

Insofar as specifications D and E are concerned, the proof discloses that, with respect to the approval of the settlement of three infants' claims, the respondent failed to disclose the entire medical expenses incurred in the treatment of the infants and the names of all the treating physicians, and had also failed to disclose the true amounts of the offers of settlement. It appears from the record that the respondent's purpose in failing to disclose the full amounts of the offers of settlement was to obtain for himself larger legal fees, since the offers also covered claims by the mothers of the infants, as to which the respondent's fees did not require court approval. Justice FANELLI stated in his report with respect to specification D (which dealt with the claim of one of the infants), "By not revealing * * * the true settlement figure of $2,000.00, respondent would have been in a position to have obtained from the infant's mother, without court approval, a legal fee based upon the receipt of the $1,100.00, plus the $300.00 awarded him * * * on the $900.00 settlement in the first order."

With respect to specification F, charging the alteration of affidavits after they had been filed with the court, Justice FANELLI noted that it is the practice in Rockland County not to immediately file compromise orders and supporting affidavits, but rather to return the papers to the attorneys for filing with the County Clerk. Although the Justice found that the charge of altering

affidavits *after* they had been filed with the court was not sustained by the evidence, he further found that the respondent did in fact alter such an affidavit sometime between the signing of the applicable compromise order and the filing of the papers with the County Clerk by the respondent.

Specifications G and H charge the respondent with soliciting and attempting to employ laymen, in one case an insurance agent and in the other a bus driver, to refer negligence cases to him and with offering to pay fees of $35 and $25 to them, respectively, for each referral. Justice FANELLI found that the evidence supported one of these charges (specification G) but that the petitioner had failed to sustain the other (specification H).

In specifications I, J and K the respondent is charged with (I) unlawfully soliciting a woman and her husband, the latter having been severely injured in an accident and physically incapacitated, to retain him to prosecute a negligence claim for the injuries and, upon being informed that they were going to retain another attorney to represent them, offering to give the wife money out of his pocket and stating that he would charge less than any other attorney and could get more money out of it for them; (J) unlawfully soliciting a person who was severely injured in an accident to retain him to prosecute a negligence claim and, in connection therewith, soliciting and attempting to employ two lay persons to assist in obtaining a retainer from the injured party upon a promise to pay to them a share of the proceeds of the recovery, and soliciting the assistance of a police officer to induce the injured party to discharge the attorney then representing him and substitute the respondent in his place; and (K) unlawfully soliciting and procuring a retainer authorizing the respondent to prosecute a negligence claim on behalf of an injured party.

The reporting Justice found that specifications I and J were fully sustained by the evidence, except with respect to one of the charges of specification J relating to the improper solicitation of one of the two lay persons to assist the respondent in obtaining the retainer; and he further found that specification K was not supported by the evidence.

In specification L the respondent is charged with wrongfully and maliciously instituting two separate actions in the Supreme Court, each against a separate physician, for alleged malpractice and negligence, in an attempt to coerce the physicians to turn over to him certain medical reports relating to the respondent's clients and, in connection therewith, (a) using the names of his clients as parties plaintiff without their knowledge or consent, (b) demanding $200,000 damages from one defendant and

$50,000 damages from the other, and (c) discontinuing the actions upon receiving the medical reports.

The evidence adduced at the hearings discloses that one of the physicians had refused to furnish the respondent with the medical report as to one of his clients because the respondent wanted him (contrary to the true facts) to causally relate the heart condition of one of his clients to the accident which was the subject matter of the case which the respondent was handling; and, as to another client, the same physician testified that he had always intended to give the requested medical report personally to the client rather than to the respondent because he "questioned respondent's character and ethics" and because of a "certain amount of hostility" which existed between the physician and the respondent as a result of prior litigation between them. With respect to the second physician, he had refused to furnish the respondent with a medical report concerning his treatment of the respondent's client until he first received his preparation fee of $15, as to which the respondent had tendered only $10.

Justice FANELLI found that this specification was overwhelmingly sustained by the evidence; that there was "absolutely no justification" for commencing the malpractice actions; and that the respondent had commenced these actions solely for the purpose of coercing the physicians to furnish him with medical reports.

The final specification (M) charges the respondent with attempting to obtain from his client a fee of $1,000 in addition to his fee of $300 which had been fixed by the New York Workmen's Compensation Board. Justice FANELLI found that this specification was sustained by the evidence.

We are in full accord with the Justice's findings that, except to the extent herein indicated, all of the charges are fully sustained by the proofs. Accordingly, the report should in all respects be confirmed.

The charges as sustained against the respondent constitute most serious professional misconduct. His behavior demonstrates a pattern of consistent misconduct and, in our opinion, he is unfit to be a member of the Bar. He has demonstrated "such a deficiency in character and fitness and such an indifference to the standards required of members of the Bar as to require his disbarment" (Matter of Markowitz, 28 A D 2d 262, 263).

The petitioner's motion to confirm the report should be granted. The respondent is adjudged guilty of serious professional misconduct and should be disbarred from the further prac-

tice of law, and his name should be removed from the roll of attorneys and counselors at law, effective forthwith.

BELDOCK, P. J., CHRIST, BRENNAN, RABIN and HOPKINS, JJ., concur.

Motion to confirm the report granted. Respondent is disbarred and his name is ordered removed from the roll of attorneys and counselors at law, effective forthwith.