JEWISH CENTER OF SUSSEX COUNTY, PLAINTIFF-RESPON-
DENT, v. CHAIM WHALE, A/K/A LOUIS R. WOLFISH,
DEFENDANT-APPELLANT.

Argued April 7, 1981—Decided July 23, 1981.

*Anthony M. Mahoney* argued the cause for appellant (*Bernstein & Mahoney*, attorneys; *Dennis M. Mahoney*, on the brief).

*Lewis Stein* argued the cause for respondent (*Nusbaum, Stein, Goldstein & Bronstein*, attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

Plaintiff, a religious congregation, seeks rescission of its contract of employment of defendant as its rabbi. The trial court granted plaintiff's motion for summary judgment, ruling that as a matter of law defendant's failure to disclose to plaintiff his prior criminal record and disbarment from the practice of law amounted to fraudulent concealment. *Jewish Center of Sussex County v. Whale*, 165 *N.J.Super.* 84, 92 (Ch.Div.1978). A divided Appellate Division panel affirmed. 172 *N.J.Super.* 165, 166 (1980). Because we are persuaded that the result reached below

finds support in the record on the narrower ground of fraudulent misrepresentation, we affirm the judgment.

I

The record before us includes the pleadings, the contract of employment, and affidavits in connection with the summary judgment proceedings. The relevant facts are undisputed. In late 1977 plaintiff placed advertisements in the Anglo-Jewish Press, seeking a rabbi to serve the congregation. In response thereto defendant submitted his resume. That document, of singular brevity, set forth defendant's name, address, telephone number, date and place of birth and marital status. Regarding education it listed his ordination in 1956 and a Bachelor of Arts degree received in 1955. Under the heading "experience" the entry for the years 1970–77 was:

Administrator, Ministry of Education Foreign Student Department, Jerusalem, Israel (1970–1977).

Finally, the resume offered to supply references upon request. No such request was ever made.

Defendant was subsequently invited to lead Friday night and Saturday morning services and meet the members of the plaintiff congregation. Thereafter, terms of employment were negotiated and the parties entered into a contract of employment dated January 1, 1978. There is no allegation that defendant performed his duties under the contract in other than a satisfactory manner.

In April 1978 plaintiff became aware that the defendant is known also as Louis P. Wolfish, had been convicted in 1975 on federal mail fraud charges, see *United States v. Wolfish,* 525 *F.* 2d 457 (2d Cir.1975), and had been disbarred from the practice of law in the State of New York, see *Matter of Wolfish,* 33 *A.D.*2d 113, 305 *N.Y.S.*2d 879 (App.Div.1969). Review of the evidence gathered pursuant to the prosecution of the mail fraud case reveals that defendant left Israel in 1972 and was a fugitive until February 14, 1974, when he surrendered to authorities. See *United States v. Wolfish, supra,* 525 *F.*2d at 459. He was

confined in a federal penitentiary as a result of his conviction. The disbarment proceedings in New York were based upon professional misconduct that included attempted bribery of a police officer, willful deception of a judge, alteration of affidavits, solicitation of negligence cases, malicious institution of malpractice actions and wrongful procurement of excessive legal fees. *Matter of Wolfish, supra,* 33 *A.D.*2d at 114, 305 *N.Y.S.*2d at 880.

After discovering these additional facts about defendant, plaintiff's Board of Trustees resolved on April 17, 1978 to rescind the employment contract and so notified defendant in a letter of the same date. Promptly thereafter plaintiff filed suit to rescind the contract and enjoin defendant from entering upon plaintiff's property or performing any functions as rabbi of the Jewish Center. The verified complaint alleged both fraudulent misrepresentation and fraudulent concealment. A previously-entered temporary restraining order was made permanent pursuant to the summary judgment entered in favor of plaintiff.

On appeal, the Appellate Division affirmed substantially for the reasons given by the trial court, ruling that

> a rabbi's ethical and moral character is a matter which goes to the essence of his employment as a congregation's spiritual leader and educational supervisor and * * * a rabbi's recent disbarment as a lawyer occasioned by a series of ethical violations, his conviction of a crime of moral turpitude committed after the disbarment and his service of a custodial sentence in a federal penitentiary are facts so obviously affecting ethical and moral character as to leave absolutely no doubt of his obligation to have disclosed them. [172 *N.J.Super.* 165, 166 (1980).]

In a dissenting opinion Judge Antell suggested that fraudulent misrepresentation might be a "sound factual footing" for resolution of the case, *id.* at 167, but that in any event summary judgment was an inappropriate vehicle by which to make the policy judgments implicit in the imposition of a duty to disclose. *Id.* at 169.

Defendant appeals as of right. *R.* 2:2–1(a)(2). Relying on *Judson v. People's Bank & Trust Co.,* 17 *N.J.* 67, 76 (1954), he contends that questions of fraud are inherently factual and not readily susceptible to summary judgment disposition. More

particularly, he argues that plaintiff has failed to establish the materiality of the alleged concealment or misrepresentation, defendant's intent to defraud, or any injury suffered by plaintiff as a result of defendant's conduct. He also echoes the dissent in the Appellate Division, arguing that the sweeping principle established by the determination below is inappropriate in a summary proceeding.

We are satisfied that the facts demonstrate that defendant fraudulently misrepresented his activity during the period from 1970 to 1977. Thus, we do not reach defendant's objection regarding the breadth of the duty to disclose imposed by the trial court and approved by the Appellate Division. Moreover, because we find that defendant's conduct amounted to equitable fraud, we are unpersuaded by his remaining objections to the insufficiency of the record below.

## II

Every fraud in its most general and fundamental conception consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith. 3 J. Pomeroy, *A Treatise on Equity Jurisprudence* 421 (5th ed.1941). Depending on the remedy sought, an action for fraud may be either legal or equitable in nature. See *Commercial Cas. Ins. Co. v. Southern Sur. Co.*, 100 *N.J.Eq.* 92, 96 (Ch.1926), aff'd, 101 *N.J.Eq.* 738 (E. & A.1927); 3 J. Pomeroy, *supra*, at 419. In addition, fraud may be either actual or constructive. The distinguishing factor is the element of untruth between the parties required in the former but not in the latter. 3 J. Pomeroy, *supra*, at 625–26.

A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment. See *Foont-Freedenfeld v. Electro-Protective*, 126 *N.J.Super.* 254, 257 (App.Div.1973), aff'd, 64

*N.J.* 197 (1974). The elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom, see Pomeroy, *supra* at 422; *Gordon v. Schelbhorn*, 95 *N.J.Eq.* 563, 573–74 (Ch.1924), are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud. *Equitable Life Assurance Soc'y v. New Horizons, Inc.*, 28 *N.J.* 307, 314 (1958). See also *Metropolitan Life Ins. Co. v. Tarnowski*, 130 *N.J.Eq.* 1, 3 (E. & A.1941); *Hernig v. Harvis*, 117 *N.J.Eq.* 146, 150–51 (Ch.1934). Thus, "[w]hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law." 3 J. Pomeroy, *supra*, at 486–88.

Plaintiff seeks only equitable remedies and therefore need meet only the lesser burden of proving equitable fraud. See *Foont-Freedenfeld, supra*, 126 *N.J.Super.* at 257. Consequently, scienter is not at issue. The other requisite elements are readily ascertained from the facts as elicited. Defendant's contrary allegations notwithstanding, the record before us discloses no genuine issue of material fact that would prevent summary disposition. See *Judson v. People's Bank and Trust Co., supra*, 17 *N.J.* at 74–75. Defendant's resume contained a false representation as to the facts surrounding his rabbinical experience from 1970 to 1977. That representation, relating as it does to defendant's skill and ability to perform the duties of a rabbi, is without question material to an evaluation of a candidate for the position of rabbi of plaintiff congregation. The fact that he submitted the resume in response to an employment advertisement can be viewed only as proof of defendant's intent that the plaintiff rely on the information contained in that document in considering its employment decision. Plaintiff's reliance on the misrepresentation is evidenced by defendant's own admission that "no inquiry was ever made into [his] past by the plaintiff" and "at no time * * * had plaintiff ever directed

any inquiry to [him] which would have reasonably required [him] to advise plaintiff of his earlier disbarment and conviction."[1]

■ In support of his contention that plaintiff failed to demonstrate that it suffered damage, defendant points out that not only is he a fully qualified rabbi, but prior to the disclosure of his past indiscretions he had performed his rabbinical duties for four months in a manner completely satisfactory to the congregation. He contends that inasmuch as plaintiff failed to prove actual damage, its motion for summary judgment based on fraud must fail. This argument misconstrues the nature of equitable fraud. Actual loss in the financial sense is not required before equity may act; equity looks not to the loss suffered by the victim but rather to the unfairness of allowing the perpetrator to retain a benefit unjustly conferred. See W. Prosser, *The Law of Torts* 732 (4th ed.1971). Thus, in awarding an equitable remedy like rescission, the claimant's actual damage is only one factor to be considered. *Id.* at 733.

■ Based on this analysis, we hold that the trial court properly granted the remedy of rescission. The defendant's misrepresentation hindered plaintiff's opportunity to discover an episode in his past that reflected unfavorably upon his moral integrity. Because of the unique moral and spiritual relationship between clergy and congregation, revelation of this episode surely would have adversely affected defendant's employment opportunity. Hence, defendant gained an unfair advantage by virtue of this misrepresentation. Furthermore, because of the qualitative nature of the services that defendant was hired to

---

[1]Defendant apparently offers these assertions to show that plaintiff's reliance was unreasonable. One who engages in fraud, however, may not urge that one's victim should have been more circumspect or astute. *Pioneer Nat'l Title Ins. Co. v. Lucas*, 155 *N.J.Super.* 332, 342 (App.Div.), aff'd, 78 *N.J.* 320 (1978).

render,[2] mere legal damages cannot make the plaintiff whole. The equitable remedy of rescission is appropriate in this case.

## III

The foregoing analysis indicates that the record below supports a holding that defendant engaged in a misrepresentation amounting to actual equitable fraud. Despite the important policy issues implicated, summary judgment was the appropriate route for disposition, given the absence of any genuine issue of material fact. See *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 65 (1980). Absent defendant's misrepresentation, the question of fraudulent concealment and defendant's duty to disclose would be squarely presented. However, since this matter may be completely determined without deciding these broader issues, we decline to reach them.

Affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal*—None.

---

[2]For example, the contract of employment noted that "[a] rabbi is the spiritual leader of the congregation and as such is called to serve the religious, educational, spiritual and pastoral needs of its membership."