731 A.2d 48 (1999)
322 N.J. Super. 330
Andrew T. ABRAMS, Bruce C. Altschuler, David Befeler and Sheila Buchbinder, John A Behrens and Joan C. Behrens, Ralph Berger and Dorothea Berger, Florence Breslow, John Calabro and Judith Calabro, Harvey Caplan, Bruce M. Chodash, John A. Devries, Theodore J. Doll and Evelyn Doll, Craig S. Eckenthal and Amy S. Eckenthal, Lee I. Fishman and Wendy Fishman, James A. Fynes, Martin V. Hirschhorn and Vera Hirschhorn, Marvin P. Jassie, Harold Kaplan, Calvin L. Kort, Joseph Lazur, John E. Leek, III, John E. Leek, Jr. Ralph N. Leek, Robert A. Lightburn, Esteban R. Lomnitz, Luis S. Lozada and Norma I. Lozada, Douglas A. MacWright and Jody H. MacWright, Matthew J. Marano, Jr., Michael W. Mulligan and Marianne Mulligan, Matthew R. Naula, Lawrence Nessman, Harry C. Oefinger, Betty Perell, Robert Petersen and Mary Ann Petersen, Dennis L. Pfisterer and Kathleen Pfisterer, Raymond P. Rappleyea, Richard Rappleyea, John C. Reed, Henry Ripp and Maureen Ripp, Stephen J. Schwartz, Alden T. Smith, Jr. and Theresa C. Smith, Terence J. Watson, Andrew Weber, Albert Willner, and Richard L. Wines, Plaintiffs-Appellants,
v.
OHIO CASUALTY INSURANCE COMPANY, Defendant-Respondent.
Joseph Principe, Plaintiff,
v.
Ohio Casualty Insurance Company, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1999.
Decided May 27, 1999.
William S. Robertson, III, Wayne, for plaintiffs-appellants (Williams, Caliri, Miller *49 & Otley, attorneys; Mr. Robertson and David Golub, on the brief).
Frederick L. Whitmer, Morristown, for defendant-respondent (Pitney, Hardin, Kipp & Szuch, attorneys; Mr. Whitmer and Richard H. Brown, on the brief).
Before Judges KEEFE, EICHEN, and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
Plaintiffs, limited partners in a real estate venture, filed this lawsuit against defendant Ohio Casualty Insurance Company ("Ohio"), a creditor of one of the general partners, asserting that it was responsible for their losses under the New Jersey Uniform Securities Law, N.J.S.A. 49:3-47 to -76, and under common law theories of fraud, conspiracy, and breach of fiduciary duty. The Law Division granted Ohio summary judgment. Plaintiffs appeal, and we now affirm.
The real estate venture began in 1985, under the name Inrevco Associates, L.P. ("Inrevco"), a limited partnership, whose initial general partners were Matthew Principe, Peter Wagner, and Penn Vest Corporation ("Penn Vest"). On October 15, Inrevco purchased for $10.4 million a Philadelphia office building, which was leased to the Internal Revenue Service. The purchase was funded by a $7 million first mortgage and a $3.4 million bridge loan. Some of the plaintiffs became limited partners on October 15, but they were not required to pay for their interests until the project was syndicated. By December 1985, the general partners, with the aid of Ryan Beck and Co., Inc. ("Ryan Beck"), an investment banking firm, successfully completed the syndication, an unregistered private placement, raising $4.7 million from $100,000 per unit investments by the plaintiffs and others.
The venture appeared to be successful for about three years. However, in 1990, plaintiffs learned that Principe had embezzled over $700,000. As a result, the venture had to be restructured under a plan that brought in new investors and substantially diluted the plaintiffs' interests.
Defendant Ohio had been a creditor of Principe since 1977. It had assumed that position by providing performance bonds to a company he controlled called Major Consolidated, Inc. ("Major"), which did contracting work for the U.S. Armed Services. Principe, his wife, and others had agreed to indemnify Ohio against any losses it might suffer for making payments under the performance bonds.
In May 1982, Ohio learned that Major had failed to pay withholding taxes for 1981, that Major owed the IRS over $350,000, and that the IRS had filed a lien against Major's assets. Consequently, Ohio refused to provide Major with any further performance bonds. However, Ohio was called upon to make payments on bonds previously issued. By 1983, Ohio had paid out approximately $2 million on behalf of Major.
In the Spring of 1985, Ohio obtained from Major and the indemnitors a $2.2 million consent judgment. Having learned from Principe and Wagner about the proposed syndication of the Philadelphia building, Ohio agreed not to file the judgment. Ohio understood that filing the judgment would probably have aborted the syndication.
Further negotiations ensued that somewhat modified the initial arrangement, but the details are unimportant. The ultimate result was that Principe and others executed a promissory note on November 7, 1985, in favor of Ohio in the amount of $2,222,679.23. They pledged as collateral 30% of the outstanding shares of Penn Vest, whose sole asset was to be a 10% interest as a general partner in Inrevco. In return, Ohio agreed to defer collection efforts for fifteen years. At any time before October 14, 1996, the obligors could pay Ohio the greater of $2.5 million or the fair market value of the Penn Vest stock *50 pledged to Ohio. On or after October 14, 1996, they could pay the original amount of the note with interest. Otherwise, on October 14, 2000, the shares of Penn Vest stock would be transferred to Ohio. In addition, the obligations to Ohio would become due upon the happening of a number of events, including (1) the sale or transfer of more than 10% of the Philadelphia property or (2) the sale or transfer by any Inrevco general partner of any part of his interest. It was also agreed that Inrevco would not "sell or otherwise convey its ownership of said real estate without the prior consent of [Ohio]." Nor would Inrevco renegotiate the lease with the IRS or execute a lease with another tenant on terms less favorable without defendant's prior consent. However, Inrevco was not a signatory to that agreement.
As should be apparent, none of the above described actions taken by Ohio in an effort to improve its chances of obtaining repayment of Principe's debt involved any communication, direct or indirect, with plaintiffs.
The only contact shown to have occurred involved one of the investors in Inrevco, Principe's brother Joseph, who was an executive of Ryan Beck. At some point within thirty days of September 15, 1985, Joseph, who is not one of the plaintiffs, called Edward Garvey, a claims manager of Ohio's South Jersey office, who was involved in Ohio's dealings with Principe. Joseph asked whether his brother was living up to his obligations to Ohio. As stated in plaintiffs' brief, "Despite his full knowledge of Principe's debt to defendant and his appropriation of [certain funds that Ohio had expected to receive from other deals in which Principe was involved]," Garvey replied, "[Y]es." Plaintiffs concede that during this conversation there was absolutely no mention of the Inrevco venture.
Plaintiffs contend that material misrepresentations were made in the private placement memorandum. For our purposes, we will assume that to be so. However, plaintiffs have offered no evidence to establish that Ohio was involved in any way in the preparation or issuance of the memorandum. Nor is there any evidence that Ohio was involved in Principe's defalcations, which were the direct cause of plaintiffs' loss.
The motion judge granted summary judgment on a number of grounds. As to the securities fraud claims, she held that plaintiffs' action was barred as untimely by the former version of N.J.S.A. 49:3-71(e). She also determined that some of the plaintiffs were barred by N.J.S.A. 49:3-49. We will not address those determinations because we are satisfied that even if the action was timely and even if N.J.S.A. 49:3-49 is inapplicable, plaintiffs could still not recover on the merits of their claims of common law fraud, conspiracy, breach of fiduciary duty, and securities fraud.
Common law fraud requires, among other things, proof of a material misrepresentation. Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25, 432 A.2d 521 (1981). Here, there is no evidence that Ohio made any representation to plaintiffs regarding this real estate venture, let alone one that contained a misstatement of a material fact. Nor is there any evidence that Ohio controlled Inrevco despite its leverage over Principe.
Similarly, there was insufficient evidence to establish that Ohio conspired with Principe. At worst, it failed to take steps that would have interfered with Principe's ability to syndicate the Philadelphia project.
Plaintiffs' claim that Ohio breached its fiduciary duty to them by remaining silent and not aggressively pursuing its legal rights also fails because, as should be apparent, they are unable to identify any relationship with Ohio that could give rise to such a duty.
Ohio's non-involvement in the sale of the limited partnership units in Inrevco and its lack of control over Inrevco entirely undercut plaintiffs' claim of liability under *51 the Uniform New Jersey Securities Law, N.J.S.A. 49:3-47 to -76.
Plaintiffs rely, first, on the proposition that minimum participation in the sale of securities is sufficient to establish seller status under N.J.S.A. 49:3-71(a). See Zendell v. Newport Oil Corp., 226 N.J.Super. 431, 439, 544 A.2d 878 (App.Div.1988). However, they have offered no evidence of any participation by Ohio in the syndication or in the sale of the Inrevco units. The record established beyond question that the syndication was conducted by Principe and Wagner, as sellers, along with Ryan Beck, as agent or broker.
As to plaintiffs' claim that Ohio should be held liable as an entity that "directly or indirectly controls a seller," the relevant statutory reference is L. 1967, c. 93, § 24 (formerly N.J.S.A. 49:3-71(b)), which provides the following:
Every person who directly or indirectly controls a seller liable under paragraph (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.
In Zendell, supra, the court rejected control person liability for a law firm that provided legal assistance in an allegedly fraudulent partnership offering. It cited several facts emphasized by the trial judge there: "no plaintiff had any contact with a member of the" firm; the firm "was not a general partner"; the firm "never acted as a broker, selling agent or underwriter;" and the firm "had no managerial position with or financial investment in the ... partnerships." 226 N.J.Super. at 440-41, 544 A.2d 878. Plaintiffs contend that here, in contrast, two of those factors were present: first, defendant, through Garvey, misled a Ryan Beck representative, Joseph Principe; and second, defendant had control over and a financial interest in Inrevco.
As previously noted, plaintiffs assert that Garvey misled Joseph Principe by saying that his brother was current on his financial obligations to defendant. But, according to Joseph Principe, he did not even learn about defendant's having provided bonding for his brother's construction contracts until probably 1989 or 1990. In any case, Garvey's statement does not constitute evidence of a contact between Ohio and plaintiffs made in connection with the sales because the Inrevco syndication was never referred to in the conversation, which lasted only two to five minutes.
Plaintiffs further assert that Ohio's financial interest in Inrevco and the terms of the 1985 agreement (which they refer to as a "secret agreement") evidenced Ohio's control over the actual sellers, Principe and Wagner, and also conferred on defendant the status or function of a general partner of Inrevco. They base this on the requirement in the 1985 agreement that the general partners procure Ohio's consent before selling the property, renegotiating the lease with the IRS, or executing a lease with another tenant on less favorable terms.
Federal securities law concepts are used to define "control person" under the New Jersey statute. See Zendell, supra, 226 N.J.Super. at 439-40, 544 A.2d 878 (following analogous federal law). When applying federal securities laws, courts have been reluctant to treat lenders as controlling persons of their borrowers. Paracor Finance, Inc. v. General Elec. Capital Corp., 96 F.3d 1151, 1162 (9th Cir.1996). Control person liability under federal law has been construed to require a showing of active participation in management, see, e.g., id. at 1162-63; Northwestern National *52 Insurance Co. v. Alberts, 769 F.Supp. 498, 509 (S.D.N.Y.1991), or of direct or indirect power over management or policies, see, e.g., Paracor, supra, 96 F.3d at 1162-63; Wiley v. Hughes Capital Corp., 746 F.Supp. 1264, 1281 (D.N.J.1990). The Securities and Exchange Commission defines control as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405 (1999).
Plaintiffs presented no evidence demonstrating that Ohio actively participated in Inrevco's management. Nor did the 1985 agreement confer on Ohio a general power to direct management or policies. It conferred a limited veto power over sale of the property or over rent reductions, actions that could have been taken only after the allegedly fraudulent syndication. Nothing in the 1985 agreement enabled Ohio to control Principe and Wagner as sellers at the time of the syndication. Plaintiffs assert that Ohio participated in the drafting of the private placement memorandum, but they point to no evidence of such participation.
In sum, since plaintiffs have failed to offer evidence that Ohio was either a seller or had control of a seller of the securities in question, their claim for securities fraud must fail. The trial judge correctly determined that Principe only pledged to Ohio his personal benefits arising from the Inrevco syndication and did not cede to Ohio, in any respect, the actual operation of that limited partnership. Therefore, the judgment is affirmed.
Affirmed.