

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-2006

# Stouts-Brunswick v. Bankers Trust Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1189

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Stouts-Brunswick v. Bankers Trust Co" (2006). *2006 Decisions.* Paper 1463.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1463

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1189

_____

STOUTS-BRUNSWICK ASSOCIATES LIMITED
PARTNERSHIP; P.K.S. ASSOCIATES; OAK LEAF
WEST ASSOCIATES LIMITED PARTNERSHIP; STOUTS
ASSOCIATES; HERBERT PUNIA and MURRAY KUSHNER,

Appellants

v.

BANKERS TRUST CO.

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 98-cv-03206)
District Judge: Honorable William G. Bassler

_____

Submitted Under Third Circuit LAR 34.1(a)
March 7, 2006

Before: RENDELL and AMBRO, <u>Circuit Judges</u>,
SHAPIRO,<sup>*</sup> <u>District Judge</u>

(Opinion filed March 9, 2006)

_____

* Honorable Norma L. Shapiro, Senior District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION

AMBRO, <u>Circuit Judge</u>

P.K.S. Associates, formed by two experienced real estate developers, entered into a real estate development partnership with Manao Investments, Inc. They later amended their partnership agreement in a side letter. When Manao attempted to exercise its right to terminate the partnership, disagreement erupted about the side letter's terms. P.K.S. blocked the termination and, along with the other named plaintiffs, sued Bankers Trust Company, which had negotiated the side letter on Manao's behalf, for misrepresenting the terms of the side letter as well as Bankers Trust's authority to negotiate these terms. The District Court held that, because the principals of P.K.S. were sophisticated and knowledgeable, their willing execution of the side letter precludes them (and, by extension, P.K.S.) from seeking to prove justifiable reliance on Bankers Trust's representations. We agree.

## I. Factual Background and Procedural History

We are writing here solely for the parties, so we provide only a summary of the relevant facts.

Stouts-Brunswick Associates Limited Partnership was formed to develop commercial real estate in New Jersey. The general partner in Stouts-Brunswick was

P.K.S. (formed by Herbert Punia and Murray Kushner),[1] and Manao was the sole limited partner. Manao is not a party to this suit, but its agent and advisor Bankers Trust is the defendant.

Manao and P.K.S. entered into a partnership agreement in 1987 to form Stouts-Brunswick, Manao contributing $1 million in exchange for a 50% interest in the partnership. Three provisions in the partnership agreement are relevant here. Paragraph 5(g) of the agreement required Manao to contribute up to $500,000 in "additional capital" if the partnership needed it, and paragraph 5(h) required the two partners to contribute "funding capital" to cure cash-flow deficits. Paragraph 5(j) allowed Manao to sell its interest in the partnership to P.K.S. for a price equal to Manao's unreturned capital investment. Manao could exercise this put "no earlier than eight (8) years subsequent to the date of execution" of the partnership agreement. (The eight years ended in 1995, so the parties refer to this right as the 1995 put.)

P.K.S. and Manao amended the partnership agreement by side letter in 1987, giving Manao the right to sell its partnership interest to P.K.S. if asked to contribute more additional capital than the $500,000 already agreed. In 1990, the partners formally amended the agreement, reducing Manao's interest in the partnership to less than 30% because P.K.S. contributed additional land to Stouts-Brunswick. In connection with this

---

[1] P.K.S., Punia, and Kushner are also plaintiffs/appellants in this suit, along with two other entities (Oak Leaf West Associates and Stouts Associates, neither of whom are discussed in the District Court's opinion or the briefing before us). In this opinion, we refer to them collectively as Plaintiffs and use specific names when necessary.

3

formal amendment, P.K.S. and Manao executed a side letter in August 1990; it is from this side letter that this suit arises.

The 1990 side letter gave Manao two rights: (1) it could sell its partnership interest to P.K.S. if it had to contribute more than $500,000 in additional capital; and (2) it could sell its interest to P.K.S. in July 1992. During the negotiations of the 1990 side letter, Fred Perlstadt (Bankers Trust's vice president) sent Manao's principal shareholder two letters suggesting that the 1995 put was no longer in place. But the side letter does not address this issue. Instead, in language discussed more fully below, it appears to leave the 1995 put in place.

We can easily guess what comes next—Manao attempted to exercise its termination right in 1995. P.K.S. refused to buy Manao's interest, and Manao sued. That suit was settled and dismissed.

Did that end the matter? Not at all, for Plaintiffs then sued Bankers Trust, claiming, *inter alia*, that it had misrepresented its authority and Manao's agreement during negotiations over the 1990 side letter. Bankers Trust moved for summary judgment, which the District Court granted in December 2004. Plaintiffs now appeal.

## II. Jurisdiction and Standard of Review

The District Court had diversity jurisdiction over this case under 28 U.S.C. § 1332. That Court entered summary judgment, so we have appellate jurisdiction under 28 U.S.C. § 1291.

Because this case comes to us on a grant of summary judgment, we exercise

4

plenary review. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 146 (3d Cir. 1993). This means that we "review the facts in the light most favorable to the party against whom summary judgment was entered." *Id.* Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III. Discussion

The District Court (by adopting the recommendations of the Magistrate Judge) characterized Plaintiffs' claims as for (1) negligent misrepresentation and (2) fraudulent misrepresentation. Both of these claims require plaintiffs to have justifiably relied on the alleged misrepresentations.[2] *See Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 440 (D.N.J.) (citing *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 143 (N.J. 1983), *superseded by statute on other grounds*) (listing the elements of negligent misrepresentation), *aff'd*, 172 F.2d 859 (3d Cir. 1998); *Fleming Cos. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837, 844 (D.N.J. 1995) (citing *Jewish Ctr. of Sussex County v. Whale*, 432 A.2d 521, 524 (N.J. 1981)) (listing the elements of fraudulent misrepresentation). The District Court, as noted above, held that Plaintiffs did not justifiably rely on Bankers Trust's statements. Plaintiffs challenge this holding.

Plaintiffs deny that they are arguing that Bankers Trust lied about whether the

---

[2] The District Court and the parties all agree that New Jersey's substantive law applies in this case.

5

1990 side letter actually replaced the 1995 put.[3] They complain instead that Bankers Trust misrepresented both "its authority and Manao's agreement that the 1990 side letter eliminated the 1995 put." Appellants' Br. 13. But the injury from all of these is the same. Whether Bankers Trust lied about the effectiveness of the 1990 side letter or about its authority to negotiate away the 1995 put, Plaintiffs' alleged injury stems from the terms of the side letter and whether the 1995 put still exists.

Plaintiffs also dispute the District Court's reliance on a case of our Court discussing whether a plaintiff in a contract breach suit could successfully add a claim of fraud. *See Vanguard Telecomms., Inc. v. S. New Eng. Tel. Co.*, 900 F.2d 645, 654–55 (3d Cir. 1990). In that case, Vanguard, after discussions with another company about sales commissions, received and sent letters detailing agreement on commission terms. *Id.* at 648–49. Later, when sizable sales—for which Vanguard did little—came through, it claimed nonetheless that it was entitled to commissions on those sales. *Id.* at 649. At trial, Vanguard requested leave to amend its complaint to add a claim of fraud, contending that the defendant had "deceived it by expressing an intention to pay commissions for all sales, and that it relied upon this assertion to its detriment." *Id.* at 655. We held that, although it was "factually conceivable that [the defendant] did at

---

[3] By doing so, Plaintiffs apparently concede away the whole of their fraudulent misrepresentation claim, which states that "[Bankers Trust] made fraudulent misrepresentations to plaintiffs that the July 1992 put would be the only time-based put available to Manao under the proposed amended agreement between PKS and Manao." Compl. count 2, ¶ 3. Despite this concession, we proceed in our opinion as if it were not made.

6

some point express an intention to pay Vanguard for all sales, there was no detrimental reliance by Vanguard." *Id.* Our reasoning was that, because its "principals were sophisticated businessmen" and because it had the ability "to clarify the agreement," Vanguard's "failure to clarify the terms regarding when compensation was due was not induced by any statements by [the defendant]." *Id.* "Given their sophistication, and their involvement, they could have structured the agreement so as to provide for commissions regardless of responsibility, or they could have refused to enter any agreement which did not so provide. This they failed to do." *Id.* Indeed, "Vanguard entered into the agreement willingly and had equal ability to evaluate the legal consequences of it." *Id.*

Here, P.K.S.'s principals were also sophisticated businessmen. Kushner is a licensed attorney, admitted to the New York and New Jersey bars. Both Kushner and Punia are experienced real estate developers and investors. They were represented by counsel throughout, though Punia said he did not have his attorney review the side letter because he thought he had accomplished what he wanted and did not want to spend the money. Punia's attorney did, however, send a copy of the 1990 side letter to Bankers Trust just over a month later, characterizing it as a clarification of the funding-capital provisions and requirements.

The District Court mistakenly adverts to "Plaintiff[s'] poor draftsmanship of the 1990 Side Letter." *Stouts-Brunswick Assocs. Ltd. P'ship v. Bankers Trust Co.*, Civ. No. 98-3206 (WGB), slip op. at 15 (D.N.J. Dec. 23, 2004). Even though the side letter was presented as a letter from P.K.S. to Manao, deposition testimony establishes that the letter

was actually drafted by Bankers Trust.[4]  But this does not excuse P.K.S. from failing to

look after its own interests and clarify the terms of the side letter.  Plaintiffs also did not

have to enter into any agreement that did not meet their needs.  Their repeated quotations

to us of Bankers Trust's letters to Manao may show what Bankers Trust was thinking

then, but Plaintiffs' *post hoc* discovery of those letters cannot prove their reliance on

Bankers Trust at the time the 1990 side letter was signed.

Both parties argue about the correct reading of the 1990 side letter by highlighting

different words to support their points.  To clarify our reasoning and support our

conclusion, we briefly analyze the language of the side letter.  It reads as follows:

> This letter is intended to replace our letter agreement dated June 5,
> 1987 . . . .  This letter will further clarify the provisions under which
> Funding Capital, as described in section 5(h) of the Partnership Agreement,
> will be contributed by the limited partner.
> Any Additional Capital, referred to in Section 5(g), or Funding
> Capital, referred to in Section 5(h), shall be contributed by the General
> Partner and Limited Partner, pro rata to their percentage of Partnership
> Interest. [The remainder of this paragraph sets out Manao's termination
> right in the event that it is asked to provide more than $500,000 of
> Additional Capital or Funding Capital.]
> In addition, in July, 1992, you [Manao] may for any reason terminate
> this partnership and receive the return of your initial capital investment less
> any prior distributions of capital.  These Options to Terminate are not
> intended to modify any other provisions in the Partnership Agreement.  If
> this letter agreement is acceptable, please sign the enclosed copy and return

---

[4] In his deposition, Perlstadt—Bankers Trust's VP—says that he did not "think [he] prepared it, but [he] certainly had it set up," Perlstadt Dep. 22:18–19, May 7, 1998, but he was not sure who prepared it, *id.* at 22:22.  Punia's deposition testimony affirms that Bankers Trust drafted the 1990 side letter.  Punia Dep. 42:6, Dec. 12, 1997.  Not to its credit, Bankers Trust failed to correct this misunderstanding and even emphasized the District Court's statement in its own brief to us.  Appellee's Br. 21.

to me at your earliest convenience.

Plaintiffs argue that the use of "other" in the letter's penultimate sentence must mean that the side letter modified section 5(j) of the partnership agreement. Their argument runs like this: because of the word "other," some provisions must have been modified, and because section 5(j) created the 1995 put, the side letter modified section 5(j). But the letter explicitly states that the provisions it modifies are "the provisions under which Funding Capital, as described in Section 5(h) of the Partnership Agreement, will be contributed by the limited partner." It does not mention section 5(j) at all. Rather, the side letter states that the two termination options it contains (one triggered by a request for more than $500,000, and one exercisable in July 1992) "are not intended to modify any other provisions in the Partnership Agreement." Plaintiffs face an uphill battle in arguing that the side letter means exactly what it does not say.

"Because any detriment which it suffered can be traced to the [1990 side letter] agreement," *Vanguard*, 900 F.2d at 655, the acceptance of that letter, which does not modify explicitly the 1995 put, forecloses Plaintiffs' argument that their losses resulted from misrepresentations by Bankers Trust.

## IV. Conclusion

Because of their sophistication and willing entry into the side-letter agreement, Plaintiffs cannot show justifiable reliance on Bankers Trust's alleged misrepresentations.[5]

---

[5] Plaintiffs argue that New Jersey's comparative negligence rule precludes us from deciding this matter on summary judgment. But they do not have a claim as a matter of

We affirm.