

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-2007

# Wirth v. Telcordia Tech Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1404

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Wirth v. Telcordia Tech Inc" (2007). *2007 Decisions.* Paper 674.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/674

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-1404

DAVID WIRTH; ELAINE M. LONDINO;
CHERYL L. MILLS; MARION RADEER,
                                        Appellants

v.

TELCORDIA TECHNOLOGIES, INC.;
SCIENCE APPLICATIONS INTERNATIONAL CORP.

On Appeal From the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 03-cv-01929)
District Judge: Hon. Joseph A. Greenway, Jr.

Argued April 20, 2007

BEFORE: McKEE, AMBRO, Circuit Judges,
and MICHEL,[*] Chief Circuit Judge.

(Filed: July 31, 2007)

---

[*]The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Steven D. Cahn (Argued)
Cahn & Parra
1015 New Durham Road
Edison, NJ 08817
  Attorney for Appellants

Francis X. Dee (Argued)
McElroy, Deutsch, Mulvaney & Carpenter
100 Mulberry Street
Three Gateway Center
Newark, NJ 07102

David J. Reilly
McElroy, Deutsch, Mulvaney & Carpenter
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
  Attorneys for Appellees

---

OPINION OF THE COURT

---

MICHEL, Chief Circuit Judge:

Plaintiffs appeal from a grant of summary judgment in favor of defendants Telcordia Technologies, Inc., and Science Applications International Corporation (collectively "Telcordia") in a case involving the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 et seq. ("WARN Act"). Telcordia's motion for summary judgment was based on Release Agreements signed by each of the plaintiffs, although the plaintiffs allege they were obtained through equitable fraud. The District Court, in granting summary

2

judgment, held that the plaintiffs failed to establish equitable fraud as a matter of law and thus the Release Agreements were binding. The District Court had jurisdiction under 29 U.S.C. § 2104(a)(5) and 28 U.S.C. § 1331, and this Court has jurisdiction under 28 U.S.C. § 1291. For the reasons set forth in this opinion, we will affirm the District Court's grant of summary judgment.

I

The cause of action at issue here stems from the WARN Act, which provides, in relevant part: "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order [to the affected employee(s)]." 29 U.S.C. § 2102(a). The relevant definition of "mass layoff" under the statute is a layoff of at least 500 employees at any single site of employment in any single 90-day period. 29 U.S.C. § 2102(d); see 29 U.S.C. § 2101(a)(3).

Plaintiffs are former employees of Telcordia. In 2001, Telcordia operated several facilities in New Jersey. In the town of Piscataway, New Jersey, Telcordia operated facilities located in six buildings, each with a different address. Three of these buildings were adjacent to each other on the same street, Corporate Place, and Telcordia considered them a single facility. Two of the other buildings were also located very close to each other on the same street, Knightsbridge Road, and were also considered by Telcordia to be a single facility. The last remaining facility was located on Hoes Lane, and Telcordia considered it separate from the others. As such, Telcordia reported labor figures for these facilities as

three separate sites of employment. Certain business units of Telcordia had employees across all three Piscataway sites, shared resources across all three sites, and shared some administrative structure among them.

The plaintiffs were employed by Telcordia in Piscataway until late 2001. Beginning in early September 2001, Telcordia began a force reduction in its New Jersey-based workforce. Plaintiffs Wirth, Londino and Radeer were laid off on October 19, 2001. Plaintiff Mills was laid off on November 16, 2001. Each of them received a one-week notice of termination and a packet of documents as their terminations were processed. This packet contained benefits and other such information along with a Release Agreement in which the terminated employee agreed to release Telcordia of all liability in exchange for the severance package outlined in the packet. The employees were informed in a letter that failure to agree to the Release Agreement would result in withdrawal of the severance package. All of the plaintiffs signed and accepted the Release Agreement's terms.

During the force-reduction process, Telcordia officials made numerous communications to its employees regarding the layoffs. In response to questions from Radeer, Carol Cole, then Telcordia's human resources director, wrote a letter to him on October 19, 2001 that stated, "we are very familiar with the WARN Act and if the requirements of the WARN Act are triggered, the company will certainly comply with it," and that the company was "analyzing the Telcordia data on an ongoing basis to ensure the company's compliance." Joint App. at 508. Radeer then posted this letter to a website,

4

XTelcordia, maintained and controlled by former Telcordia employees. Cole's department also posted information ("FAQs") on the Telcordia website that stated, "The current state of the business requires that we separate employees from payroll as quickly as possible [thus some employees will not receive a 60 day notice]." Joint App. at 510. Telcordia's president, Harold Smith, sent an e-mail to all Telcordia employees on October 22, 2001, explaining that the company's financial difficulties made it necessary to only offer one-week notices. Cole also periodically reported layoff statistics to the New Jersey Department of Labor ("DOL"). DOL posted layoff statistics on its website.

Wirth, Londino and Radeer all testified that they reviewed and relied on the data posted on DOL's website in assessing whether to sign the Release Agreement. All three also testified they reviewed and relied on the October 19, 2001 Cole letter, and Wirth also relied on the FAQs posted on Telcordia's website. Mills testified that she had relied on the Telcordia FAQs and the October 22, 2001 Smith e-mail.

Plaintiffs filed suit on April 28, 2003, alleging that Telcordia had violated the WARN Act by terminating them with less than 60 days of notice. They alleged that Telcordia laid off more than 500 employees, themselves included, over a 90-day span beginning in September 2001, thus triggering the WARN Act's 60-day notice requirement. Telcordia filed for summary judgment, arguing that the Release Agreements signed by each and every plaintiff barred their claims. In response, plaintiffs alleged that the Release Agreements were unenforceable because they had been obtained through equitable fraud. The District Court

held that no genuine issues of material fact had been established as to whether Telcordia made material misrepresentations to the plaintiffs, that no such misrepresentations had been made, that the Release Agreements were thus binding and enforceable, and that Telcordia was entitled to summary judgment as a result. Plaintiffs then timely filed this appeal.

## II

Our review of the District Court's summary judgment order is plenary, and we apply the same test as the District Court. Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 111-12 (3d Cir. 1996). Summary judgment may only be granted if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Gottshall v. Consol. Rail Corp., 56 F.3d 530, 533 (3d Cir. 1995). All facts and reasonable inferences must be considered in the light most favorable to the non-movant. Spain v. Gallegos, 26 F.3d 439, 446 (3d Cir. 1994).

To prove equitable fraud, plaintiffs must demonstrate (1) a material misrepresentation of a presently existing or past fact, (2) reasonable reliance on the misrepresentation, and (3) injury resulting from the reliance. Mortellite v. Novartis Crop Protection, Inc., 460 F.3d 483, 492 (3d Cir. 2006) (citing Jewish Center of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981)). As distinguished from legal fraud, no scienter requirement exists; in other words, there is no requirement that the alleged defrauding party intended or knew that the misrepresentation was false. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1182-83 (3d Cir. 1993). Plaintiffs must prove the elements of equitable fraud by clear and convincing

6

evidence.[1] Id.

A

Plaintiffs allege that Telcordia made four material misrepresentations: (1) allegedly inaccurate reporting of layoff numbers to DOL, which were ultimately posted to the DOL website; (2) the October 19, 2001 Cole letter to Radeer; (3) the October 22, 2001 Smith e-mail to all employees; and (4) the FAQs published on the company website. In order to be misrepresentations, each of these communications must contain one or more false statements.

As for the DOL layoff statistics, Telcordia reported layoff numbers via a series of five letters from May 10 through December 10, 2001. These figures included layoffs from September 2001 through January 2002 and from all of Telcordia's New Jersey facilities.[2] DOL then posted monthly "WARN Notices" on its website that purported to give aggregated statewide layoff numbers; these WARN Notices were then allegedly relied on by the plaintiffs in their assessment of whether Telcordia was complying with the WARN Act. DOL posted four WARN Notices for the relevant period that list "layoff begin" dates of September 4, October 11, and December 31, 2001, and January 31, 2002.

The parties have several disputes regarding these disclosures, but none of them is a

---

[1]Plaintiffs briefly argued in the alternative that the Release Agreements were also invalid because they did not have an opportunity to negotiate the agreements and their severance packages were contingent on their signing the agreements. Although this argument was not really pressed by plaintiffs on appeal or before the District Court, we examined the issue and conclude that this argument lacks sufficient merit.

[2]In addition to the three Piscataway sites, Telcordia also listed sites in Redbank and Morris Township, New Jersey.

7

genuine issue of material fact.[3]  It is undisputed that the WARN Notices report aggregated layoff figures for all of Telcordia's New Jersey sites together, thus it is impossible to discern how many layoffs are attributable to Piscataway or when exactly they took place.  Further, the documents and evidence in the record plainly show that the DOL website did not report the same numbers disclosed to DOL by Telcordia.  For example, Telcordia's July 25, 2001 letter to DOL reported that 656 employees (473 in the three Piscataway sites) were to be laid off prior to October 1, 2001.  Joint App. at 499-500.  The DOL website reported 185 September layoffs statewide, however, and only 215 between its September and October WARN Notices.  Joint App. at 656-57.  Given such discrepancies, the DOL WARN Notices cannot reasonably be said to be representations attributable to Telcordia since Telcordia had no control over DOL or DOL's website.[4]  The District Court thus did not err by holding that the DOL Warn Notices do not constitute material misrepresentations by Telcordia.

The portions of the October 19, 2001 Cole letter to Radeer that plaintiffs allege are material misrepresentations amount to Telcordia's promise to comply with the WARN Act and its statement that it was analyzing the appropriate data to monitor that compliance.  Thus

---

[3]The parties dispute whether it was proper or lawful for Telcordia to report statistics for its Piscataway facilities as three separate sites of employment rather than one.  They also dispute whether the figures reported by Telcordia were accurate and properly counted as well as whether DOL accurately posted the figures Telcordia had reported.  These issues, while disputed, are irrelevant in this context.

[4]We do not, however, express any view by this opinion as to whether communications by an entity through an independent intermediary of this nature could under different circumstances be attributable to the entity.

8

these can only be a misrepresentations if (1) Telcordia did not intend to comply with the WARN Act or knew it did not comply, or (2) it was not monitoring its layoff data for WARN Act compliance. Plaintiffs focus on the former and do not argue the latter; in fact, they argue the opposite in alleging that Telcordia consciously manipulated the layoff data for the purpose of dodging the WARN Act's requirements. But as the District Court noted, there is no evidence of any such purpose or plan.[5] Plaintiffs argue that Telcordia's choice to designate Piscataway as three separate sites of employment for WARN Act purposes was a deliberate attempt to circumvent the WARN Act. But there is no evidence that supports this accusation.[6] The only evidence in the record is testimony indicating that Telcordia chose this site designation scheme because it was already in use for reporting affirmative action data to the Office of Federal Contract Compliance Programs. While that choice may have been legally incorrect, the evidence does not reasonably support an inference that Telcordia did

---

[5]Plaintiffs argue that the District Court's analysis of Telcordia's intent constitutes reversible error because it imposed a scienter requirement improper to their equitable fraud defense. However, the District Court makes clear that its analysis was directed instead to determining whether Telcordia's statement of its intent to comply with the WARN Act in the October 19, 2001 Cole letter was true or false, i.e., whether it was a misrepresentation.

[6]It is well settled that a genuine issue of material fact cannot be raised by mere argument or allegations unsupported by more than a scintilla of evidence. Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co., 10 F.3d 144, 148 (3d Cir. 1993). Plaintiffs cite testimony by Cole in which she admitted that she had not personally reviewed the WARN Act nor was she personally familiar with its requirements as to how sites of employment are to be designated. Given the importance of the WARN Act, a person in Cole's position ideally should be more knowledgeable about its precepts. But this Cole testimony alone is insufficient to establish a triable issue as to whether the letter's statement of Telcordia's diligence regarding the WARN Act was false.

9

not intend to comply with the WARN Act as it promised to in the October 19, 2001 Cole letter.

Regarding the Smith e-mail and website FAQs, they merely state Telcordia's business rationale for reducing notice times. There is no evidence that suggests that Telcordia's financial difficulties were fabricated or were not the motivation for the shorter notice times, as those documents claim. Thus there is no issue of fact as to whether these documents contain misrepresentations; they simply do not.

B

Plaintiffs also failed to sufficiently prove or even raise a triable issue on actual reliance as to the DOL WARN Notices. Three of the four plaintiffs testified that they relied on the DOL disclosures, but all three signed their Release Agreements by October 19, 2001.[7] As such, they could at most have relied on the September and October WARN Notices. Even assuming that they were misrepresentations of Telcordia, these two WARN Notices could not have sufficiently informed Wirth, Londino, or Radeer about Telcordia's WARN Act compliance. The WARN Act is triggered when at least 500 employees have been laid off in a 90-day period. The September and October WARN Notices only indicated that fewer than 500 employees had been fired in just two months, well short of 90 days. Wirth, Londino, and Radeer thus could not yet have known whether Telcordia would exceed the 500

_____

[7]Wirth, Londino, and Radeer claim that they relied on the DOL WARN Notices. Mills only claims that she relied on the Smith e-mail and the FAQs.

10

employee threshold in the month following their signing of their Release Agreements. Therefore Wirth, Londino, and Radeer could not have relied on these two WARN Notices to judge whether Telcordia was violating the WARN Act before they signed their Release Agreements.

## III

Because plaintiffs failed to provide evidence sufficient to raise any genuine issues of material fact, and because plaintiffs failed to establish a triable issue as to whether Telcordia obtained their signed Release Agreements by equitable fraud, the District Court correctly found that Telcordia was entitled to summary judgment. As such, we will affirm its judgment.