**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0460-18T1

83 WILLOW AVENUE
APARTMENTS, LLC,

      Plaintiff-Respondent,

v.

83 WILLOW, LLC,

      Defendant-Appellant,

and

89-91 WILLOW AVENUE
CONDOMINIUM ASSOCIATION,
INC., REALTY EXPRESS
LABARBERA PROPERTY
MANAGEMENT, LLC, WILLOW
NEWARK, LLC, JASON LOWNEY
and JENNIFER LOWNEY, h/w,
ROBERT TAINSKY and HARRIET
TAINSKY, h/w, DANIELLE
D'ESPOSITO, ESQUIRE
PROPERTIES, LLC, SUKHBIR GILL,
OREN KNISHINSKY and JENNIFER
KNISHISKY, h/w, EDWARD
LAGOMARSINO and DEBORAH
LAGOMARSINO, h/w, KARTHIK
RAMACHANDRAN and S. CAWLA

RAMACHANDRAN, h/w, STUDIO
HOBOKEN, LLC, ALAN FISCHER,
JEFF WHITE, JEFF WHITE, LLC,
and WILLOW & NEWARK, LLC,

     Defendants-Respondents.
_____

Submitted December 16, 2019 – Decided January 16, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-2903-16.

Varcadipane & Pinnisi, PC, attorneys for appellant
(Jeffrey William Varcadipane, on the brief).

Bogart Kean Ryan, LLC, attorneys for respondent 83
Willow Avenue Apartments, LLC (James F. Ryan, Jr.,
on the brief).

PER CURIAM

     In this civil action, defendant-seller 83 Willow, LLC appeals from an August 29, 2018 order awarding $267,500 to plaintiff-buyer 83 Willow Avenue Apartments, LLC. Following a bench trial, the judge rendered a thirteen-page decision finding defendant committed legal fraud by failing to disclose the existence of a long-term lease of nine parking spaces on the Property sold to plaintiff. On appeal, defendant argues that the judge made numerous erroneous factual and legal conclusions warranting reversal. We disagree and affirm.

I.

This case arises from three parcels of commercial property located at 83 Willow Avenue, 307 Newark Street, and 89 Willow Avenue in Hoboken. All three of these properties were parking lots. In 2003, Willow & Newark, LLC (Willow & Newark), acquired the properties from a bank trust. At the time of the purchase, Willow & Newark was aware of deed restrictions on the properties regarding parking for a neighboring condominium, the Jefferson Trust building. Specifically, residents of the Jefferson Trust building were entitled to use the parking lot at 307 Newark Street and any overflow parking at the 83 Willow Avenue parking lot. After acquiring the properties, Willow & Newark conveyed 307 Newark Avenue to 307 Newark, LLC and 83 Willow Avenue to 83 Willow, LLC. Willow & Newark remained the owner of 89 Willow Avenue.

In 2005, Willow & Newark sold the 89 Willow Avenue property to Jeff White, LLC (White), along with approvals that Willow & Newark obtained for the construction of a condominium (the 89 Willow Avenue Condominium Association). As part of that transaction, Willow & Newark leased nine parking spaces on the 307 Newark Street property (the parking lease) to White. The parking lease provided nine parking spaces at the to-be-built parking garage at 307 Newark Street for the residents of the condominium that White intended to

build. The parking lease also provided a back-up plan: the nine parking spaces would be located at 83 Willow Avenue in the event that the garage at 307 Newark Street was not completed by the time White obtained a certificate of occupancy.

In or around 2011, 83 Willow, LLC (defendant), was approached by 83 Willow Avenue Apartments, LLC (plaintiff), through its representative Seth Martin (Martin), as a potential purchaser of the 83 Willow Avenue property (the Property), along with approvals to build a condominium. In August 2011, the parties entered into a contract for the sale of 83 Willow Avenue for $3,930,000 (the Purchase Contract). However, defendant was unable to secure building approvals for the Property. Accordingly, defendant attempted to cancel the Purchase Contract. Plaintiff sued for specific performance (the specific performance action). During discovery in that litigation, plaintiff discovered that there were deed restrictions on approximately forty-two parking spaces for residents of the Jefferson Trust building. Plaintiff requested an abatement of the purchase price due to the Property's undisclosed restrictions.

In August 2014, the parties engaged in mediation and entered into a settlement agreement (the Settlement Agreement). The Settlement Agreement required that defendant sell the Property to plaintiff for $3,540,000—a $390,000

reduction in the original purchase price. The Settlement Agreement also provided "[t]itle to be marketable title as per contract, subject to deed restrictions re[garding] Jefferson Trust." Paragraph five of the Settlement Agreement provided that plaintiff "assume any and all parking obligations for the subject property."

In November 2014, the properties closed with an exchange of purchase price monies, a Deed, and an Affidavit of Title. The Affidavit of Title, signed by Alan Fischer, defendant's managing member, indicated that there were no tenants or other occupants of the Property. The Deed was provided to plaintiff and contained the following standard provision:

> Promises by Grantor. The Grantor promises that the Grantor has done no act to encumber the Property. This promise is called a "covenant as to grantor's acts" (N.J.S.A. 46:4-6). This promise means that the Grantor has not allowed anyone else to obtain any legal rights which affect the Property (such as by making a mortgage or allowing a judgment to be entered against the Grantor).

Shortly after the closing, Martin placed notices on the vehicles parked on the Property asking for the drivers' information so that he could prepare new leases. Thereafter, he received a letter from an attorney indicating that there were nine parking spaces for residents of the 89 Willow Avenue Condominium Association who had long-term leases for parking on the Property. The lease

for the nine parking spaces was between Willow & Newark and the 89 Willow Avenue Condominium Association, and dated September 29, 2005, after Willow & Newark had conveyed its interest in the Property to 83 Willow, LLC. The term of the lease was for two consecutive ninety-nine-year periods. The lease was signed by Fischer on behalf of the lessor, Willow & Newark.

In January 2015, plaintiff filed this action against defendant, and a single count remained at the time of the trial—reformation of a contract based upon fraud and/or misrepresentation. Defendant filed a pre-answer motion, alleging that plaintiff's claim was moot because defendant unconditionally offered full rescission of the Settlement Agreement and Purchase Contract, and it would take back the Property and refund plaintiff the full purchase price. Plaintiff rejected defendant's offer and pursued the action seeking reformation of the contract and a reduction of the purchase price by the loss in the Property's value due to the nine undisclosed parking restrictions.

The bench trial was conducted over four days in 2018. At the outset of trial, defendant made a motion to bar plaintiff's expert's testimony and for the trial judge to take judicial notice of defendant's offer to rescind the contract after defendant received plaintiff's second lawsuit. The judge heard argument on the motions and reserved decision.

6

At trial, plaintiff called several witnesses: John. J. Curley, plaintiff's attorney; Martin, plaintiff's managing member; and Anthony F. Lama, plaintiff's expert and realty appraiser. Defendant called one witness: Fischer, defendant's managing member. At the close of plaintiff's proofs, the judge granted Fischer's motion to dismiss, pursuant to Rule 4:37-2(b).

On August 29, 2018, the judge issued a written decision making factual and credibility findings, and concluding that plaintiff established, by clear and convincing evidence, that "defendant[] committed legal fraud." The judge awarded plaintiff $267,500 in damages, representing the diminution in the Property's value due to the undisclosed lease for nine parking spaces.

II.

We begin by noting our limited review of a trial judge's fact-finding in a non-jury case. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). We are required to "defer to a judge's factual findings in a non-jury matter when those findings are supported by adequate, substantial and credible evidence." Kas Oriental Rugs, Inc. v. Ellman, 394 N.J. Super. 278, 284 (App. Div. 2007) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974)). We owe "deference to those findings of the trial judge [that] are substantially influenced by [the judge's] opportunity to hear and see the

A-0460-18T1

witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). But a trial judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Our review of a trial judge's legal conclusion is de novo. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006).

III.

Defendant contends that the trial judge made a "multitude of factual findings that are devoid of support in the record" or are contradicted by the judge in his opinion. First, defendant argues that the trial judge contradicted himself with respect to Exhibit A of the Affidavit of Title. Exhibit A would normally contain a list of exceptions to the representations made in the affidavit. Defendant asserts that the trial judge noted in two separate points of the written decision that there was a factual dispute as to whether the Affidavit of Title included an Exhibit A, but then the judge concluded that there was no dispute that the exhibit was not in fact attached to the Affidavit of Title.

A-0460-18T1

At trial, Fischer, who was not present at the closing, testified that he signed the Affidavit of Title prior to the closing and that there was an attached addendum listing the parking tenants on the Property. Curley, who was present at the closing, testified that he relied upon the Affidavit of Title at the time of the closing, and seeing no attachment, believed that there were no exceptions to the title. Accordingly, as the judge correctly noted, there was a dispute as to whether Exhibit A was attached to the Affidavit of Title. Exhibit A however was not produced at trial, and no witness testified as to what happened to the exhibit. The judge found both Fischer and Curley credible, but because there was no exhibit nor explanation for the absence of such, the judge resolved the factual dispute against Fischer. The judge concluded that "the Affidavit of Title speaks for itself[,]" and "[i]t indicates there are no tenants or other occupants of the [P]roperty." Thus, he found that there was no dispute that an exhibit was not given at the time of the closing. We decline to disturb the judge's finding as it was supported by adequate, substantial and credible evidence.

Next, defendant argues that the trial judge erroneously found that Curley learned of the nine additional parking spaces approximately one week after the closing, not during the settlement of the prior litigation. During cross-examination, Curley testified that after requesting a list of all the Property's

parking tenants, defendant's attorney provided a list at the closing just before the title closed. The list contained the names, addresses, security deposits and rent for each tenant. One entry names Realty Express Labarbera as the tenant and designates "[nine] spaces" in parentheses. Defendant asserts that these are the nine additional spaces rented by Willow & Newark to the 89 Willow Avenue Condominium Association.

In his recitation of Curley's testimony, the trial judge stated that when the Property closed, Curley requested a list of any tenants occupying the Property from defendant's attorney, and "[i]t was [Curley's] testimony that he was never given a list and was told that the tenants were month-to-month." Although the judge's recitation of the testimony may be mistaken—that is, Curley testified that he received a list of the tenants at the closing—it does not change the judge's conclusion. Curley was aware of the parking tenants for the Jefferson Trust building because that issue was resolved in specific performance action. Curley also testified that he was not aware of, or provided with, any parking leases besides the deed restrictions favoring the Jefferson Trust residents. Curley and Martin also testified that they learned of the nine additional parking spaces about a week after the closing when Martin put notices on the vehicles parked on the Property to advise the parkers that he now owned the Property and that the

parkers' monthly rent would be paid to him thereafter. He assumed the leases were month-to-month because that is what defendant told them at the closing.

Accordingly, the trial judge noted that the Affidavit of Title affirms there are no tenants or other occupants of the Property, and the prior litigation resolved the issue of the deed restrictions for the Jefferson Trust residents and reduced the purchase price. The judge stated, "[t]his would lead the [c]ourt to believe that the sellers, notwithstanding the prior litigation, had an obligation to disclose approximately [twenty][1] parking spaces that had two [ninety-nine]-year leases. The representation of the Affidavit of Title was false." Therefore, although the judge may have been mistaken in his recitation of Curley's testimony, his ultimate finding—that plaintiff and Curley learned of the nine parking spaces after closing—is supported by adequate, substantial and credible evidence.

Next, defendant contends that the trial judge committed legal error by failing to impute plaintiff with inquiry notice regarding tenants in possession. In Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 128 (1967), the Court stated,

---

[1] It appears the judge referred to twenty parking spaces, when he meant the nine parking spaces.

A-0460-18T1

> [w]hen an intending purchaser of property knows that a lessee is in occupancy, he must inquire of the tenant as to the nature and scope of his tenancy. Knowledge of the tenancy charges the new owner with notice of all information he would obtain by inquiry of the tenant with respect to the character of his occupancy. It is settled that possession of a tenant amounts to notice of his rights, not merely under the lease itself, but resulting from modifications of it and collateral agreements. If the successor in title fails to make the necessary inquiry, he is estopped to deny any of the existing rights of the tenant.

Moreover, in Schnakenberg v. Gibraltar Savings & Loan Ass'n, 37 N.J. Super. 150, 157 (App. Div. 1955), this court further explained,

> it is the duty of a purchaser to inquire of the person in possession of the premises and ascertain the rights under which he holds, and if this duty of inquiry be disregarded, the purchaser is chargeable with notice of such facts as the inquiry, if it had been in fact made[.]

Here, plaintiff had notice of tenants in possession of the parking lot. But the issue is whether plaintiff had notice of the long-term lease between Willow & Newark and the 89 Willow Avenue Condominium Association for nine parking spaces on the Property. Martin testified that he was aware of the parking tenants from the Jefferson Trust building, but that he was not aware of the lease for the 89 Willow Avenue Condominium Association. Curley testified that he first learned that the 89 Willow Avenue Condominium Association also had parkers on the Property after Martin distributed the notices on the vehicles.

A-0460-18T1

Notably, there was already a dispute over the Property's parking restrictions in the specific performance action, but the nine parking spaces for the 89 Willow Avenue Condominium Association were not disclosed at any time during that action.

Moreover, in addition to and in light of the prior litigation, Curley took reasonable actions to inquire into the leaseholds. He reviewed two current title binders, which did not show any other recorded leases. He relied on the Affidavit of Title, which he testified did not contain an attachment with exceptions. He also relied on the Deed, which contained a promise that the grantor did not take any action to encumber the Property. According to Curley, at the closing, he asked defendant's attorney to confirm that any other parking on the Property, other than the Jefferson Trust residents, was there only on a month-to-month basis. Curley testified that defendant's attorney left the room to make a phone call and when he returned, he confirmed that all of the spaces were on a month-to-month basis and no one had a written lease, except for the Jefferson Trust residents.

Therefore, in light of the prior litigation and the subsequent actions taken by plaintiff and Curley, we conclude that the trial judge did not err by declining

A-0460-18T1

to impute plaintiff with inquiry notice of the lease of the nine parking spaces for residents of the 89 Willow Avenue Condominium Association.

IV.

Furthermore, defendant contends that the judge erroneously found that plaintiff proved legal fraud by clear and convincing evidence based on the Affidavit of Title and the Deed.

"A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Suarez v. E. Int'l Coll., 428 N.J. Super. 10, 28 (App. Div. 2012) (quoting Jewish Ctr. of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981)). The five essential elements of a common law fraud claim are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Ibid. (quoting Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). "One who engages in fraud, however, may not urge that one's victim should have been more circumspect or astute." Jewish Ctr., 86 N.J. at 626 n.1.

A-0460-18T1

Defendant raises a number of issues to suggest that plaintiff's reliance on the Affidavit of Title and Deed was unreasonable, and therefore, plaintiff cannot prove a claim of legal fraud. First, defendant points to the Second Restatement of Torts for the proposition that reliance on a misrepresentation is not reasonable or justifiable if the recipient "knows that it is false or its falsity is obvious to him." Restatement (Second) of Torts § 541 (Am. Law Inst. 1997); see also Walid v. Yolanda for Irene Couture, 425 N.J. Super. 171, 182 (App. Div. 2012) (stating that "[t]he principles set forth in the Restatement accurately reflect the law in New Jersey"). Defendant argues that plaintiff knew that representations in the Affidavit of Title and Deed—that there were no tenants or occupants on the Property—were inaccurate.

Here, plaintiff obviously knew about the Jefferson Trust residents parking on the Property because that was the subject of the specific performance action. In light of the prior litigation and plaintiff's undisputed knowledge of the Jefferson Trust encumbrance, plaintiff reasonably relied on the Deed's promises by the grantor provision, which provided that the grantor did not take any action to encumber the Property. It was understood that this did not include the Jefferson Trust residents parking encumbrance because that issue was resolved in the Settlement Agreement in 2014, several months before the closing.

Likewise, plaintiff reasonably relied on defendant's counsel's representation at the closing that any other parking on the Property was on a month-to-month basis, except those from the Jefferson Trust building.

Defendant also argues that plaintiff did not establish the second element of fraud—that the party committing the fraud has knowledge of the falsity. Defendant asserts that there was no evidence that Fischer intended to mislead plaintiff regarding the parking lease. According to defendant, Fischer reasonably believed that the parking lease was recorded and that plaintiff therefore would have, and should have, discovered it.

The judge found that this element was met and stated, "[t]he [c]ourt is convinced that there is clear and convincing evidence that . . . Fischer knew of the leases, as the leases in question were the subject of a recorded [l]ease on September 29, 2005, which was recorded with the Hudson County Register of Deeds in September of that same year[.]" Although the issue regarding the title search was not part of this litigation, the judge noted that the lease for the nine parking spaces was granted by Willow & Newark and signed by Fischer. Willow & Newark had already deeded its interest in the Property to 83 Willow, LLC at the time it entered into the lease agreement with the 89 Willow Avenue Condominium Association. Thus, the judge "surmised" that the title insurer's

16

title search "did not pick up the notice of the recorded long[-]term parking leases as it was outside the chain of title." The judge's finding is supported by adequate, substantial and credible evidence.

V.

Defendant contends that the trial judge erred by not enforcing the Purchase Contract, as modified by the Settlement Agreement, according to its plain and ordinary meaning. Generally, "courts should enforce contracts as made by the parties." Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 101 (1980). "[I]t is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties." Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Ibid. (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). Moreover, it is the court's "task . . . to enforce the contract according to its terms, giving those terms 'their plain and ordinary meaning.'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)). "A settlement agreement between parties to a lawsuit is a contract." Nolan v. Lee Ho, 120 N.J.

465, 472 (1990) (citing Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983)).

First, defendant argues that the trial judge should have interpreted and enforced paragraph five of the Settlement Agreement pursuant to its plain and ordinary meaning. Paragraph five states that plaintiff is "to assume any and all parking obligations." Defendant however fails to address paragraph three of the Settlement Agreement, which states, "[t]itle to be marketable title as per contract, subject to deed restrictions re[garding] parking Jefferson Trust." Paragraph five cannot be read in isolation to suggest that plaintiff was assuming all parking obligations. Plaintiff was unaware of the nine parkers from the 89 Willow Avenue Condominium Association.

Moreover, the Settlement Agreement arose from litigation relating to the deed restrictions for parking for Jefferson Trust residents. Accordingly, when considering "the circumstances at the time of drafting," and applying a "rational meaning," we conclude that paragraph five did not imply that plaintiff was to assume parking obligations that it did not know about and were not the subject of litigation at the time. See Pacifico, 190 N.J. at 266. Under the circumstances at the time of the Settlement Agreement, the parties intended plaintiff to assume

the parking obligations for the Jefferson Trust Building, as that was the subject of the litigation.

Further, defendant contends plaintiff agreed to limit the remedies available in the event that the Property was not delivered in compliance with the contract, and accordingly, plaintiff's recovery violates the limitations. Paragraph thirty of the Purchase Contract provides, "[i]n the event the [seller] fails or refuses to close title to the [property] in accordance with this Contract, [buyer's] sole remedy is termination of the Contract with a return of deposit or a suit for specific performance." Defendant argues that because Martin brought the prior action for specific performance, he was prohibited from filing the instant action.

Defendant's argument is unconvincing. It is not an issue that defendant failed or refused to close title to the Property in accordance with the contract. Title had already closed. This action is a post-performance action for damages for the value of the nine parking spaces leased to the 89 Willow Avenue Condominium Association. Thus, we conclude that the trial judge correctly enforced the Purchase Contract, as modified by the Settlement Agreement.

VI.

Defendant contends that the trial judge erred by awarding plaintiff monetary damages based upon a claim for reformation of a contract.

When a contract cannot be rescinded because it was already performed, "reformation may still be available as an equitable remedy." Dugan Constr. Co. v. N.J. Tpk. Auth., 398 N.J. Super. 229, 242 (App. Div. 2008). "The traditional grounds justifying reformation of an instrument are either mutual mistake or unilateral mistake by one party and fraud or unconscionable conduct by the other." Id. at 242-43 (quoting St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden, 88 N.J. 571, 577 (1982)). Both rescission and reformation are available remedies in an action for equitable fraud. See Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 611 (1989). Courts view reformation of a contract as an "extraordinary remedy," requiring "[c]lear, convincing proof of facts pertinent to the remedy." Martinez v. John Hancock Mut. Life Ins. Co., 145 N.J. Super. 301, 312 (App. Div. 1976).

The Court has distinguished equitable fraud from legal fraud:

> A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment. The elements of scienter, that is, knowledge of the falsity

20

A-0460-18T1

and an intention to obtain an undue advantage therefrom, are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud. Thus, [w]hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law.

[Jewish Ctr., 86 N.J. at 624-25 (alteration in original) (internal quotation marks and citations omitted).]

Thus, unlike legal fraud, equitable fraud does not require knowledge of the falsity and an intent to obtain an undue advantage. Baldasarre v. Butler, 254 N.J. Super. 502, 521 (App. Div. 1992), aff'd in part, rev'd in part, 132 N.J. 278 (1993).

In a situation where reformation is appropriate, its purpose is "to restore the parties to the status quo ante and prevent the party who is responsible for the misrepresentation from gaining a benefit." Bonnco, 115 N.J. at 612. Moreover, "[i]n an action for equitable fraud, the only relief that may be obtained is equitable relief, such as rescission or reformation of an agreement and not monetary damages." Daibo v. Kirsch, 316 N.J. Super. 580, 591-92 (App. Div. 1998) (quoting Enright v. Lubow, 202 N.J. Super. 58, 72 (App. Div. 1985)). However, legal fraud may give rise to money damages. Id. at 588.

Here, the judge correctly found that plaintiff established a claim for fraud. The judge acknowledged that plaintiff claimed that the Deed and the Affidavit

21

of Title exchanged at the closing made misrepresentations, and therefore, plaintiff sought a reformation of the contract by a reduction in the purchase price. The judge went through each factor of legal fraud, and determined plaintiff satisfied each factor by clear and convincing evidence.

Accordingly, the judge properly found that plaintiff established a claim for legal fraud. As noted by the Court, "[w]hatever would be fraudulent at law will be so in equity[.]" Jewish Ctr., 86 N.J. at 625 (first alteration in original) (internal quotation marks and citation omitted). In light of the fact that the closing already took place, the judge determined that the appropriate remedy was to reform the contract's purchase price. The judge awarded plaintiff $267,500—the loss in the Property's value due to the nine leased parking spaces. Essentially, the judge reformed the purchase price by awarding plaintiff money, since payment had been made and the Property closed.

Alternatively, even if the judge improperly awarded money damages based on plaintiff's claim for reformation, as defendant contends, it was in his discretion to amend the pleadings. We conclude the judge did not abuse his discretion. Rule 4:9-2 provides:

> When issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties, they shall be treated in all respects as if they had been raised in the pleadings and pretrial order. Such

> amendment of the pleadings and pretrial order as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend shall not affect the result of the trial of these issues.

Defendant did not object to the establishment of the fraud claim at trial. The judge conducted the bench trial, considered the evidence, and determined that plaintiff established legal fraud, which required an additional element (scienter) than equitable fraud. The judge essentially amended the pleadings to provide a claim for legal fraud and an award of money damages. Based on his finding of fraud, the judge awarded plaintiff the value of the parking spaces, as that value represented the loss in the total property value.

Furthermore, defendant asserts that the trial judge erred by rejecting, without explanation, its argument that plaintiff failed to mitigate its damages. By way of a motion in limine, defendant requested the trial judge take judicial notice, pursuant to N.J.R.E. 201, of its offer to rescind the contract upon plaintiff's filing of the instant action. Specifically, defendant requested the judge take judicial notice of its court filing at the outset of litigation that contained an unconditional offer to fully rescind the transaction, which plaintiff rejected. In his written decision, the judge did not address defendant's mitigation argument.

It is well-settled that parties injured by a breach of contract have a common law obligation to take reasonable steps to mitigate their damages. McDonald v. Mianecki, 79 N.J. 275, 299 (1979). "Damages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts without undue risk, burden or humiliation." Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 82-83 (App. Div. 1997) (internal quotation marks and citation omitted). "[T]he burden of proving facts in mitigation of damages rest[s] upon the party breaching the contract." Id. at 83 (second alteration in original) (quoting Cohen v. Radio-Elecs. Officers Union, 275 N.J. Super. 241, 262 (App. Div. 1994)).

Defendant's argument is unavailing. First, even if the judge took judicial notice of defendant's unconditional offer to rescind the transaction, that fact does not prove that plaintiff failed to mitigate its damages. Plaintiff purchased the Property, and the closing already occurred. Defendant wanted to rescind the transaction and get the Property back so that it could sell it at a higher price. Plaintiff however was entitled to the Property. Defendant cannot now assert that plaintiff failed to mitigate its damages because it rejected defendant's offer to rescind the transaction, give back the Property, and get its money back. Second, plaintiff did mitigate its damages by giving defendant credit for the income

24

generated by the nine parking spaces. At trial, plaintiff's expert testified to the value of the parking spaces, and then reduced that number by the income that could be generated from those parking spaces. Thus, plaintiff mitigated its damages, and defendant, the breaching party, failed to prove otherwise.

Lastly, defendant maintains that plaintiff's expert testimony was a net opinion and not based on facts in the record. Defendant asserts that plaintiff's expert "conclusively asserted" an opinion that there was a loss in the Property's value due to the undisclosed parking restrictions for nine parking spaces. Defendant argues that plaintiff's expert did not explain how he reached the amount of loss in value.

The net opinion rule "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). An expert is required to "give the why and wherefore that supports the opinion, rather than a mere conclusion." Townsend v. Pierre, 221 N.J. 36, 54 (2015) (internal quotation marks and citations omitted). An appellate court must apply the abuse of discretion standard when assessing whether a trial judge properly admitted expert testimony. In re Accutane Litig., 234 N.J. 340, 391 (2018).

A-0460-18T1

Here, the testimony of plaintiff's expert, Anthony F. Lama, was based on factual evidence, and thus, it was not a net opinion. Lama was qualified as an expert in property appraisal field without objection from defendant. During trial, Lama explained that there are three primary approaches to evaluate and appraise property: the cost approach, the sales comparison approach, and the income approach. He testified that he considered all three approaches and determined that two methods were applicable: the sales comparison approach was the applicable method in determining the value of the parking spaces, and the income approach was the applicable method in determining the value of the lease. Lama provided various comparisons of similarly situated properties in the area. He concluded that the market value of one parking space, if sold in fee simple, would be $47,500. Because there are nine parking spaces, the total market value of the spaces would be $427,500. Lama concluded that the nine parking spaces would produce $160,000 in income. Lama explained plaintiff's loss is the difference between selling the nine spaces in fee simple and leasing the nine spaces at the rental amount agreed to in the Settlement Agreement. Accordingly, Lama deducted the income from the leases ($160,000) from the total value of the nine spaces ($427,500), equaling $267,500.

A-0460-18T1

We conclude plaintiff's expert explained the "why and wherefore" in support of his opinion. Pierre, 221 N.J. at 54 (internal quotation marks and citations omitted). Therefore, this court should conclude that the judge did not abuse his discretion in admitting the expert testimony.

To the extent that we have not addressed the parties' remaining arguments, we conclude that they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0460-18T1